IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS, a foreign corporation, | Case No. 3:17-cv-00344-SB |
| | **OPINION AND ORDER** |
| Plaintiff, | |
| v. | |
| OREGON INTERIORS, INC., an Oregon corporation; AARON ENSLEY, an individual; and BROOKE ENSLEY, an individual, | |
| Defendants. | |

**BECKERMAN, United States Magistrate Judge.**

American Hallmark Insurance Company of Texas ("Plaintiff") brings this action against Oregon Interiors, Inc. ("Oregon Interiors"), an Oregon corporation, Aaron Ensley ("Mr. Ensley"), president of Oregon Interiors, and Brooke Ensley ("Ms. Ensley"), an Oregon Interiors employee and Mr. Ensley's daughter (collectively, "Defendants"). Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 (ECF No. 23), and Defendants assert a breach-of-contract counterclaim (ECF No. 24).

Plaintiff and Defendants now move for summary judgment (ECF Nos. 37 and 40, respectively) pursuant to FED. R. CIV. P. 56 on the following question of law: whether Plaintiff has a duty under either of two insurance policies to defend any of the Defendants in an underlying lawsuit. All parties consent to the jurisdiction of a U.S. Magistrate Judge pursuant to FED. R. CIV. P. 73(b). (ECF No. 36.) The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons explained below, the Court grants Plaintiff's motion for summary judgment and denies Defendants' motion for summary judgment.

## BACKGROUND

### Negotiation and Purchase of Insurance Policies and Exclusion of Named Driver

In early 2016, Elliott, Powell, Baden & Baker, Inc. ("EPBB") and its employee Noah Baker ("Baker") acted as insurance agency and agent, respectively, for Oregon Interiors. (Perucca Decl. ¶¶ 1-4.) On February 26, 2016, Iza Padron ("Padron"), an underwriter at Hallmark Commercial Insurance Solutions, emailed a draft insurance policy for Oregon Interiors to Baker and Jeanette Simmons ("Simmons"), a commercial account manager at EPBB. (Decl. David P. Rossmiller Supp. Pl.'s Resp. Defs.' Mot. Summ. J. ¶ 3, ECF No. 44 (hereinafter "Rossmiller Resp. Decl."), Ex. 2, at 12.) Padron requested "confirmation that we have a complete drivers list" and stated that "we will need to pull MVRs for all employees regardless of if they are drivers or not[.]" (Id. Ex. 2, at 12.) MVRs are motor vehicle reports, also known as driving records.

That same morning, Padron emailed Simmons the same request, stating "I would love to get this over for issuance today" and "I cannot issue this without running MVRs." (Id. at 11-12.) Simmons sent Padrone the MVRs later that morning, and Padron then responded, asking for "specifics of the two accidents [Ms. Ensley] was involved in," namely, whether Ms. Ensley was

"at fault[.]" (*Id.* at 11.) Still that same morning, Simmons emailed Padron that she would "find out about [Ms. Ensley's] two accidents and get back to [him]." (*Id.* at 10; *see* Decl. David. P. Rossmiller Supp. Pl.'s Mot. Summ. J. ¶ 2, ECF No. 38 (hereinafter "Rossmiller MSJ Decl."), Ex. 1, at 1-2 (showing Ms. Ensley's driving record history).)

On March 2, 2016, Padron emailed Simmons, asking for "any news on [Ms. Ensley's] accidents?" (Rossmiller Resp. Decl. Ex. 2, at 9.) On March 11, 2016, Padron forwarded the prior email to Simmons and wrote, "Following up on the below; please advise ASAP." (*Id.*) Still that morning, Simmons forwarded the email to Baker, who responded to Padron that the May accident "was a very small fender bender" where "[Ms. Ensley] lightly rear-ended someone[,]" and the October accident "was not [Ms. Ensley's] fault." (*Id.* at 7-8.) Later that day, Debi Holl ("Holl"), a commercial multi-line underwriter for Plaintiff (Holl Decl. ¶ 1), emailed Baker the following:

> I'm afraid we cannot cover [Ms. Ensley]. First, we'll need proof that the October accident was not her fault (police report?) but I don't think it's going to matter. She has an excessive speeding ticket that is enough to exclude her as far as I'm concerned. We will be processing an endorsement to exclude her; we will need it signed and returned asap.

(Rossmiller Resp. Decl. Ex. 2, at 7.)

On March 16, 2016, Holl emailed Baker a copy of the Named Driver Exclusion (the "NDE Endorsement"), writing "[i]t's in the quote also. Please get it signed & returned to us." (*Id.* at 5-6.) Baker responded that afternoon, asking whether the "exclusion exclude[s] Brook (sic) from non-owned liability[.]" (*Id.* at 4.) Holl responded later that afternoon, "Yes. It excludes from covered vehicles and covered vehicles would be those specified, those that are non-owned and those that are hired." (*Id.*) That same day, Baker emailed Mr. Ensley the NDE Endorsement for signature with the following message:

Unfortunately due to [Ms. Ensley's] heavily checkered motor vehicle record and young age [Plaintiff] has excluded her from your auto policy. This means [Ms. Ensley] will not be able to drive company vehicles moving forward (once the exclusion is signed.) We can readdress this exclusion once the speeding ticket (over 25mph) falls off her record. This will be in September of 2017. I have set myself a reminder.

I'm not sure what role [Ms. Ensley] has in your business. If [Ms. Ensley] doesn't drive often in the course of business then this isn't a large issue. Just make sure she rides with another employee when she does need a ride.

However if [Ms. Ensley] needs to drive a vehicle on a regular basis then there are ways we can work around this. I will give you a call this afternoon to go over your options.

I will need you to sign the attached driving exclusion and return to me at (sic) as soon as you can.

(Perucca Decl. Ex. 1, at 1-4.)

On March 18, 2016, Baker emailed Holl, "I am working on getting the exclusion signed…hopefully will get it to you today." (Rossmiller Resp. Decl. Ex. 2, at 1.) On March 22, 2016, Baker emailed Mr. Ensley again, writing "I will need the attached driving exclusion signed and returned soon. Otherwise [Plaintiff] will set up your account for cancellation." (Perucca Decl. Ex. 1, at 6.) Mr. Ensley sent the signed NDE Endorsement to Baker that day. (Id. at 5-8.) Still that day, Baker emailed the signed NDE Endorsement to Holl. (Id. at 5.)

### Relevant Policy Terms

Oregon Interiors purchased from Plaintiff two insurance policies with itself as named insured: policy number 44-CL-490548-00 (the "Business Auto Policy") and policy number 44-CU-490549-00 (the "Umbrella Policy") (collectively, the "Policies"). (See Rossmiller MSJ Decl. ¶¶ 3-4, Ex. 2, Ex. 3.) Both policies had effective dates of February 25, 2016, to February 25, 2017. (Id. Ex. 2, at 2; Ex. 3, at 2.)

The Business Auto Policy provides liability coverage and exclusions as follows, in pertinent part:

> We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'.

(*Id.* Ex. 2 at 11.) The term "insureds" includes "[y]ou for any covered 'auto'[,] . . . [a]nyone else while using with your permission a covered 'auto' you own, hire or borrow except . . . [t]he owner or anyone else from whom you hire or borrow a covered 'auto'." (*Id.*) "The words 'you' and 'your' refer to the Named Insured shown in the Declarations." (*Id.* at 10.) The Named Insured is Oregon Interiors. (*Id.* at 2.)

The Umbrella Policy provides two types of liability coverage: (1) Coverage A, referred to as excess liability coverage ("Umbrella Coverage A"); and (2) Coverage B, referred to as extended liability coverage ("Umbrella Coverage B"). (*Id.* Ex. 3, at 7-9.)

Umbrella Coverage A provides liability coverage and exclusions as follows, in pertinent part:

> We will pay those sums, in excess of the amount payable under the terms of any 'underlying insurance,' that the insured becomes legally obligated to pay as damages because of 'injury' or damage to which this insurance applies, provided that the 'underlying insurance' also applies, or would apply but for the exhaustion of its applicable limits of insurance . . . .
>
> We will have the right to participate in the defense of claims or suits against the insured seeking damages because of 'injury' or damage to which this insurance may apply. We will have a duty to defend such claims or suits when the applicable limit of insurance of the 'underlying insurance' has been used up by payment of judgments, settlements and any cost or expense subject to such limit."
>
> This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the 'underlying insurance' . . .
>
> The exclusions applicable to the 'underlying insurance' also apply to this insurance.

(*Id.* at 7.) The Business Auto Policy is listed on the Schedule of Underlying Insurance. (*Id.* at 3.)

Umbrella Coverage B provides liability coverage and exclusions as follows, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies. This insurance applies only to 'injury' which occurs during the policy period. The 'injury' must be caused by an 'occurrence.' This insurance applies only to 'injury' which occurs in the 'coverage territory.'
>
> This insurance does not apply to . . . '[i]njury' that is the subject of the insurance policies shown in the Schedule of Underlying Insurance in the Declarations.
>
> This insurance does not apply to any 'injury' excluded under the insurance shown in the Schedule of Underlying Insurance.

(*Id.* at 7-8, 24.)

For purposes of the Umbrella Policy, "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured for Coverage B, and any person qualifying as such under 'underlying insurance' for Coverage A." (*Id.* at 7.) Section II – Who Is An Insured provides the following, in pertinent part:

> If you are designated in the Declarations as . . . [a]n organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as officers or directors . . . .
>
> Each of the following is also an insured: . . . [y]our employees, other than your executive officers, but only for acts within the scope of their employment by you.

(*Id.* at 9.) As in the Business Auto Policy, "'you' and 'yours' refer to the Named Insured shown in the Declarations." (*Id.* at 7.) The Named Insured in the Declarations is Oregon Interiors and is labeled as a corporation. (*Id.* at 2.)

The NDE Endorsement was added to the Business Auto Policy and went into effect on March 16, 2016. (*Id.* Ex. 2, at 40-43, 51.) It states, in pertinent part:

[I]t is agreed that the insurance afforded by this policy, with the exception of uninsured motorists, underinsured motorists and personal injury protection as legally mandated by the State of Oregon, shall not apply with respect to any claim arising from accidents which occur while the covered vehicle is operated by the named individual listed below.

(*Id.* at 51.) Ms. Ensley is named as the excluded driver. (*Id.*)

**Accident and Underlying Lawsuit**

On September 14, 2016, Gregory M. Fox ("Fox") filed a complaint against Defendants in the Circuit Court of the State of Oregon for the County of Multnomah — case number 16CV30165 (the "Fox Lawsuit") — alleging economic and non-economic damages in an amount not to exceed $1,750,000. (Rossmiller MSJ Decl. ¶ 5, Ex. 4, at 1-5.) In the complaint, Fox alleges that on April 4, 2016, Ms. Ensley drove a 2007 Chevrolet Tahoe (the "Tahoe") owned by Oregon Interiors. (Pl.'s First Am. Compl. ¶ 17.) The Tahoe is listed on the Schedule of Covered Autos You Own included in the Business Auto Policy. (Rossmiller MSJ Decl. Ex. 2, at 9.) Fox further alleges that at approximately 10 a.m., Ms. Ensley "failed to stop at a stop sign" and struck Fox, who was riding a bicycle, with the Tahoe. (Pl.'s First Am. Compl. ¶ 19.) In addition, Fox alleges that (1) Ms. Ensley "was acting in the course and scope of her employment" with Oregon Interiors when she struck him; (2) Oregon Interiors and Mr. Ensley — as president of Oregon Interiors and father of Ms. Ensley — gave Ms. Ensley permission to drive the Tahoe; and (3) Fox suffered a traumatic brain injury, hearing loss in his left ear, injury to his left hip, knee, and leg, and injury to his right thigh. (*Id.* ¶ 22.)

Based on those factual allegations, Fox filed a negligence claim against Oregon Interiors and Ms. Ensley for "failing to keep a proper and careful lookout;" "failing to maintain control of the vehicle;" and "failing to stop at a stop sign." (Rossmiller MSJ Decl. Ex. 4, at 3.) Fox also asserted a negligent entrustment claim against Oregon Interiors and Mr. Ensley for "entrusting

the 2007 Chevrolet Tahoe to [Ms. Ensley] when it was known – or . . . based on the deliberate exclusion of [Ms. Ensley] from Oregon Interiors['] auto insurance coverage, should have been known – that [Ms. Ensley] lacked the maturity, skills or competency to safely operate a motor vehicle." (*Id.* at 3-4.)

### Defendants' Insurance Claim

On April 8, 2016, an insurance claim for the accident was tendered to Plaintiff. (Pl.'s First Am. Compl. ¶ 20.) Plaintiff denied coverage for the claim on April 11, 2016, but paid the requisite "statutory coverages[.]" (*Id.* ¶ 21.) On November 29, 2016, the claim was retendered to Plaintiff on behalf of Oregon Interiors and Mr. Ensley, who, along with Ms. Ensley, sought a defense in the Fox Lawsuit. (*Id.* ¶¶ 24-25.) Plaintiff responded on December 14, 2016, that "it was having the file reviewed." (*Id.* ¶ 26.) On or about February 16, 2017, Plaintiff again denied coverage for Defendants "based in part on the [NDE Endorsement]." (*Id.* ¶ 27.)

Plaintiff filed this case seeking a declaratory judgment that it has no duty under the Policies to defend Defendants against the Fox Lawsuit. (Pl.'s First Am. Compl. at 6.) Defendants counterclaimed, seeking damages for Plaintiff's alleged breach of its contractual duty to defend Defendants against the Fox Lawsuit. (Defs.' Answer, Affirm. Defenses, Countercl. Pl.'s First Am. Compl. at 6.)

### ANALYSIS

### I.     STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of that party. *Porter v. Cal.*

*Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess

the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation

omitted).

## II.    DISCUSSION

### A.    Introduction

The parties dispute whether Plaintiff has a duty under either of the Policies to defend

Defendants against the Fox Lawsuit. Specifically, they dispute (1) whether the addition of the

NDE Endorsement to the Business Auto Policy was supported by valid consideration; and (2) if

so and Umbrella Coverage A incorporates the Business Auto Policy's exclusions, whether

Umbrella Coverage B nevertheless provides coverage. In analyzing those issues, the Court

applies the following burden of proof, standards governing Plaintiff's duty to defend, and rules

of insurance policy interpretation.

#### 1.    Applicable Burden of Proof

Under Oregon law, the insured generally bears the initial burden of proving coverage

under an insurance policy. *QBE Ins. Corp. v. Creston Court Condo., Inc.*, 58 F. Supp. 3d 1137,

1144 (D. Or. 2014) (citation omitted). If the insured meets its burden, the burden shifts to the

insurer to prove that the policy excludes coverage. *Id.* (citation omitted). However, that general

rule does not apply "when the insurer brings an action for a declaratory judgment to adjudicate

the question of coverage and alleges that no coverage exists[.]" Instead, "the insurer has the

burden of proving why there is no coverage." *United Pac. Ins. Co. v. Mazama Timber Prod., Inc.*, 270 Or. 242, 245 (1974) (citations omitted).

## 2.     Standards Governing Plaintiff's Duty to Defend

Under Oregon law, when determining whether an insurer has a duty to defend an action against its insured, the court must focus on the complaint in the underlying lawsuit and the insurance policy. *Century Indem. Co. v. Marine Grp., LLC*, 848 F. Supp. 2d 1238, 1246 (D. Or. 2012) (citing *Ledford v. Gutoski*, 319 Or. 397, 400 (1994)). In *Ledford*, the Oregon Supreme Court held that "[t]he insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." *Ledford*, 319 Or. at 400 (emphasis in original) (citation omitted). In other words, "[e]ven if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy." *Id.* (citation omitted). Furthermore, "[a]ny ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Id.* (citation omitted).

## 3.     Rules of Insurance Policy Interpretation

How to construe an insurance policy is an issue of law. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 469 (1992). In resolving the issue, the court's task is to determine the parties' intent "based on the terms and conditions of the insurance policy" (*id.*), from the perspective of the "ordinary purchaser of insurance." *Totten v. N.Y. Life Ins. Co.*, 298 Or. 765, 771 (1985). When a policy term is undefined, courts look to dictionary definitions to determine the term's ordinary meaning. *See, e.g.*, *Mut. of Enumclaw Ins. Co. v. Rohde*, 170 Or. App. 574, 579 (2000). Furthermore, if a term is subject to competing plausible interpretations, the court must examine those interpretations "in the light of . . . the particular context in which

that term is used in the policy and the broader context of the policy as a whole." *Hoffman*, 313 Or. at 470. If, after that examination, more than one interpretation continues to be reasonable, then the term must be construed against the insurer as drafter. *Id.*

### B. Validity of the NDE Endorsement

#### 1. Consideration

Modification of a contract, including an insurance policy, requires additional consideration. *Liberty Mut. Fire Ins. Co. v. Hubbard*, 275 Or. 567, 570 (1976). The Business Auto Policy was effective beginning February 25, 2016. (Rossmiller MSJ Decl. Ex. 2, at 2.) The NDE Endorsement, a contractual modification restricting the coverage of the Business Auto Policy, was not added until its effective date, March 16, 2016. (*Id.* at 51.) Defendants assert that the NDE Endorsement is void because its addition to the Business Auto Policy was not supported by consideration, as required. (Defs.' Mot. Summ. J. at 11-17.) Plaintiff argues that forbearing cancellation of the Business Auto Policy based on Ms. Ensley's driving record was valid consideration. (Pl.'s Resp. Defs.' Mot. Summ. J. at 6-12.)

##### a. Forbearance of Cancellation

Defendants do not dispute that forbearance of cancellation may constitute consideration for a contract modification.[1] (Defs.' Mot. Summ. J. at 12 n.2; Reply Supp. Defs.' Mot. Summ. J. at 4; Defs.' Sur-Reply Summ. J. at 2.) Defendants assert that "such forbearance *only* serves as

---

[1] Defendants note that the General Change Endorsement corresponding to the NDE Endorsement states the following: "For an additional/return premium, the items below are changed as indicated: ADDING DRIVER EXCLUSION FOR [MS. ENSLEY][.]" (Rossmiller MSJ Decl. Ex. 2, at 40.) Yet, Defendants argue, Plaintiff "did not reduce or refund any of the policy premiums[.]" (Defs.' Mot. Summ. J. at 11-12.) There is no contradiction, however, because the General Change Endorsement goes on to state "NO ADDITIONAL/RETURN PREMIUM IS DUE FOR COMMERCIAL AUTOMOBILE POLICY[.]" (Rossmiller MSJ Decl. Ex. 2, at 40.) Furthermore, because the Court finds forbearance of policy cancellation to be valid consideration for the NDE Endorsement, consideration in the form of a reduced or refunded premium is not necessary.

consideration *if clearly and contemporaneously stated* by the insurer at the time an endorsement is issued." (Defs.' Mot. Summ. J. at 12 n.2 (emphasis added)). Defendants draw that standard from an Eighth Circuit case, which held that "mere forbearance in exercising a right to cancel is not sufficient consideration—this always could be used as an after-the-fact consideration when a loss occurred. If the insurance company desires to cancel, it should so state in clear terms and proceed accordingly." *S. Farm Bureau Cas. Ins. Co. v. U.S.*, 395 F.2d 176, 181 (8th Cir. 1968). Consequently, Defendants ask the Court to "decide whether [Baker's] email is a clear and contemporaneous statement by Plaintiff to forebear (sic) from cancelling[.]" (Defs.' Sur-Reply Summ. J. at 2.) As an initial matter, the Eighth Circuit's standard is not controlling in the Ninth Circuit. Furthermore, in *Knappenberger v. Cascade Ins. Co.* — the only Oregon case Defendants cite and the only such case of which the Court is aware — the Oregon Supreme Court did not require the insurance company to "state in clear terms" or "clearly and contemporaneously state[]" its desire to cancel. 259 Or. 392, 401 (1971) (concluding that continuation of an existing insurance policy was adequate consideration for an endorsement excluding coverage of the insured's son, who had been in two car accidents, where the insurer was not obligated to renew the policy).

   In any event, here, Plaintiff explicitly communicated its forbearance of cancellation to Mr. Ensley and Oregon Interiors, satisfying even Defendants' proposed standard and assuaging any concern that Plaintiff used forbearance as after-the-fact consideration. First, Holl reviewed Ms. Ensley's driving record, determined that Ms. Ensley was an "unacceptable risk[,]" and communicated the same to Baker along with notice that "if Oregon Interiors failed to accept and sign the [NDE Endorsement], then cancellation would be sent immediately . . . ." (Holl Decl. ¶¶ 3-8; *see also* McGuffey Decl. ¶¶ 5-6 (testifying that, "[h]ad the named insured, Oregon Interiors,

refused or otherwise failed to agree to endorse the [NDE Endorsement], . . . [Plaintiff] would have cancelled the [Business Auto Policy]"). Next, Baker emailed the NDE Endorsement to Mr. Ensley to sign on March 16, 2016, and followed up on March 22, 2016, writing "I will need the attached driving exclusion signed and returned soon. *Otherwise [Plaintiff] will set up your account for cancellation.*" (Perucca Decl. Ex. 1, at 1-2, 6 (emphasis added).) Mr. Ensley signed the NDE Endorsement as president and authorized representative of Oregon Interiors and emailed it to Baker fifteen minutes later. (*Id.* at 5-8.)

Accordingly, Plaintiff's forbearance of cancellation of the Business Auto Policy, expressly communicated to Mr. Ensley on the day he signed the NDE Endorsement, was valid consideration in support of the NDE Endorsement.[2] The Court having so found, Defendants acknowledge that the NDE Endorsement formed part of the Business Auto Policy effective March 16, 2016. (Defs.' Sur-Reply Summ. J. at 2.) Therefore, Plaintiff has no duty under the Business Auto Policy or under Umbrella Coverage A to defend Defendants against the Fox Lawsuit.[3] Plaintiff is entitled to summary judgment on those issues.

///

///

---

[2] Because the Court finds valid consideration for the NDE endorsement, it does not address Plaintiff's alternative argument that consideration was not necessary because the NDE endorsement was not a contract modification but a reduction of the parties' agreement to writing. (*See* Pl.'s Resp. Defs.' Mot. Summ. J. at 12-14; *see also* Defs.' Reply Supp. Defs.' Mot. Summ. J. at 5-7.)

[3] Defendants do not dispute that the NDE Endorsement excludes coverage under the Business Auto Policy if properly added thereto. In addition, Defendants acknowledge that Umbrella Coverage A incorporates the Business Auto Policy's exclusions, including the NDE Endorsement. (Defs.' Mot. Summ. J. at 21-22 ("Coverage A states that '[t]he exclusions applicable to the 'underlying insurance' also apply,' thereby invoking the NDE Endorsement (and all [Business Auto Policy] exclusions) in its totality . . . ."); Defs.' Resp. Opp'n Pl.'s Mot. Summ. J. at 12 (same).)

## C.  Application of the NDE Endorsement to Umbrella Coverage B of the Umbrella Policy

Left to resolve is whether the NDE Endorsement, properly added to the Business Auto Policy and incorporated into Umbrella Coverage A, also excludes coverage under Umbrella Coverage B.[4]

Defendants advance two arguments in favor of Umbrella Coverage B coverage: (1) its Exclusion r. ("Exclusion r."), which refers to "injuries," does not incorporate the NDE Endorsement, which refers to "claims"; (2) if the Business Auto Policy's exclusions were incorporated into both Umbrella Coverage A and Umbrella Coverage B, the coverage would be redundant, resulting in illusory coverage. (Defs.' Mot. Summ. J. at 21-25.)

Plaintiff responds that (1) Umbrella Coverage B does not provide coverage because its Exclusion a. ("Exclusion a.") and Exclusion r. exclude injuries that are the subject of the Business Auto Policy, including injuries already excluded thereby; and (2) Umbrella Coverage B covers some types of potential loss not covered by Umbrella Coverage A, so the two coverages are not redundant and Umbrella Coverage B is not illusory. (Pl.'s Resp. Defs.' Mot. Summ. J. at 19-23.)

Pursuant to *Hoffman*, the Court will determine whether the parties' competing "plausible interpretations . . . withstand scrutiny, *i.e.*, continue[] to be reasonable, after the interpretations

---

[4] Defendants assert that Plaintiff did not move for summary judgment regarding Umbrella Coverage B because Plaintiff "refers only to the coverage grant, exclusions, and language of [Umbrella Coverage A]" in its motion. (Defs.' Resp. Opp'n Pl.'s Mot. Summ. J. at 12.) The Court disagrees. Plaintiff does not mention specific provisions of Umbrella Coverage B, but it argues that "[t]he Umbrella Policy does not provide a defense for the Fox Lawsuit[]" and defines "Umbrella Policy" to mean the entire policy. (Pl.'s Mot. Summ. J. at 7, 13.) Furthermore, the issue of whether the NDE Endorsement excludes coverage under Umbrella Coverage B has been fully briefed by Plaintiff and Defendants and is ripe for summary judgment.

are examined in the light of" the context of Umbrella Coverage B and the broader Umbrella Policy as a whole. 313 Or. at 470.

### 1. Text and Context of Umbrella Coverage B

Umbrella Coverage B contains a list of exclusions. (Decl. Sean M. Carney Supp. Defs.' Mot. Summ. J. ¶ 4, ECF No. 41 (hereinafter "Carney MSJ Decl."), Ex. C, at 8.) Exclusion a. provides: "This insurance does not apply to . . . '[i]njury' that is the subject of the insurance policies shown in the Schedule of Underlying Insurance in the Declarations." (*Id.* Ex. C, at 8.) An endorsement adds another exclusion, Exclusion r., which provides, "This insurance does not apply to any 'injury' excluded under the insurance shown in the Schedule of Underlying Insurance." (*Id.* at 24.) "Injury" is defined as "'bodily injury,' 'property damage,' 'advertising injury' or 'personal injury.'" (*Id.* at 13.) The Schedule of Underlying Insurance includes the Business Auto Policy. (*Id.* at 3.)

### a. Defendants' Interpretation

Defendants argue that Exclusion r. does not incorporate Business Auto Policy's NDE Endorsement because Exclusion r. refers to "injury." (Defs.' Mot. Summ. J. at 22.) In contrast, the NDE Endorsement provides that "the insurance afforded by this policy . . . shall not apply with respect to any *claim* arising from accidents which occur while the covered vehicle is operated by [Ms. Ensley]." (Carney MSJ Decl. Ex. B, at 232 (emphasis added).) Defendants argue that because the NDE Endorsement uses the term "claim," it does not exclude coverage of "injuries," and thus is not incorporated by Exclusion r., which incorporates exclusion of injuries only. (Defs.' Mot. Summ. J. at 22.)

In support of this argument, Defendants point out that Umbrella Coverage A's exclusions section provides, "The exclusions applicable to the 'underlying insurance' also apply to this

insurance." (*Id.* (quoting Carney MSJ Decl. Ex. C, at 7).) By its use of the word "exclusions,"

Defendants argue, that provision in Umbrella Coverage A unambiguously incorporates the NDE

Endorsement — and all other Business Auto Policy exclusions — "in its totality without

reference to the sorts of injuries, claims, or liabilities covered or excluded." (*Id.*) Defendants

assert that if Plaintiff intended Umbrella Coverage B to incorporate the NDE Exclusion, it could

have used the same text it used in Umbrella Coverage A. (*Id.* at 22-23 (concluding that "[t]he

difference [in text] means something.").)

### b.  Plaintiff's Interpretation

Plaintiff agrees that Umbrella Coverage A, *excess* liability coverage, covers what the

Business Auto Policy covers and excludes what the Business Auto Policy excludes, but

"provides the insured with additional policy limits for covered claims if the underlying limits

become exhausted." (Pl.'s Resp. Defs.' Mot. Summ. J. at 18.) Plaintiff contends that Umbrella

Coverage B, *extended* liability coverage, "applies only to injuries outside the scope of the

[Business Auto Policy] but within the stated scope of [Umbrella] Coverage B." (*Id.*) Plaintiff

argues that nothing within the scope of the Business Auto Policy is covered by Umbrella

Coverage B because of its Exclusion a. and Exclusion r. (*Id.* at 20.) Under Plaintiff's

interpretation, Exclusion a. provides that Umbrella Coverage B does not cover injuries that are

the subject of the Business Auto Policy, and Exclusion r. provides that Umbrella Coverage B

does not cover injuries excluded by the Business Auto Policy. (*Id.* at 20-21.) In other words,

Plaintiff continues, Exclusion r. makes clear that injuries excluded by the Business Auto Policy

nevertheless are the subject of the Business Auto Policy for purposes of Exclusion a. Therefore,

they are not covered by Umbrella Coverage B. (*Id.* at 21.)

Applied to this case, Plaintiff's interpretation means that Fox's injuries are not covered by Umbrella Coverage B because, under Exclusion a., they are the subject of the Business Auto Policy in that they arise out of an accident caused by an insured's driving of a covered vehicle. (*Id.* at 20.) Furthermore, under Exclusion r., Fox's injuries are excluded from coverage by the Business Auto Policy via the NDE Endorsement because they arose from an accident that occurred while Ms. Ensley operated a covered vehicle. (*Id.* at 21.)

Plaintiff finds no significance in the NDE Endorsement's use of the word "claim" versus Exclusion r.'s use of the word "injury." (*Id.*) Plaintiff reasons that "injury" is defined as, among other things, "bodily injury," and "bodily injury" is normally covered by the Business Auto Policy. (*Id.* at 22.) However, in this case, Fox's "bodily injury" is not covered because it was caused by an excluded driver. (*Id.*) Plaintiff concludes with a common-sense argument: "There is no question that whether the word 'claim' or 'injury' is used, in the context of coverage of the Fox Lawsuit, the words both refer to [Ms. Ensley] hitting [Fox] with a truck and seriously injuring him." (*Id.*)

## 2. Broader Context of the Umbrella Policy as a Whole

In analyzing Umbrella Coverage B in the broader context of the Umbrella Policy as a whole, the parties invoke two related rules of construction. First, courts "assume that parties to an insurance contract do not create meaningless provisions." *Hoffman*, 313 Or. at 472; *see also* OR. REV. STAT. § 742.016 ("[E]very contract of insurance shall be construed according to the terms and conditions of the policy."). Second, the illusory coverage doctrine invalidates exclusions that are so broad that they render a policy's coverage illusory. *See Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Conn.*, No. 05-1315-JE, 2007 WL 464715,

at *10 (D. Or. Feb. 7, 2007) (finding that an exclusion did not render coverage illusory because "potential losses occurring in a variety of other circumstances are covered").

### a.  Defendants' Interpretation

Defendants assert that the NDE Endorsement cannot apply to Umbrella Coverage B because it applies to Umbrella Coverage A. (Defs.' Mot. Summ. J. at 23.) Defendants reason that if the same exclusions apply to both sides of the Umbrella Policy, the coverage is redundant. (*Id.*) Under Exclusion a., if an injury *is* covered by the Business Auto Policy, then it is *not* covered by Umbrella Coverage B. (*Id.*) Therefore, Defendants assert, "[t]he reverse must also be true." (*Id.*) That is, if an injury is *not* covered by the Business Auto Policy, then it *must* be covered by Umbrella Coverage B. (*Id.*)[5] Otherwise, "there would never be a situation where Umbrella Coverage B applied, but the [Business Auto Policy] did not." (*Id.*) Defendants assert that the Business Auto Policy's exclusions cannot be incorporated into Umbrella Coverage B because that would "render[] the umbrella coverage meaningless or illusory." (*Id.* at 25.)

### b.  Plaintiff's Interpretation

Plaintiff responds that "[i]njuries that are not the subject of the [Business Auto Policy] could be covered by [Umbrella] Coverage B as long as they meet the other requirements of [Umbrella] Coverage B's coverage grant and are not excluded by an enumerated exclusion . . . ." (Pl.'s Resp. Defs.' Mot. Summ. J. at 22-23.) Therefore, Plaintiff argues, incorporation of the NDE Endorsement into both Umbrella Coverage A and Umbrella Coverage B does not necessarily mean the two coverages are redundant or that Umbrella Coverage B is illusory. (*Id.*) "As long as [Umbrella] Coverage B provides coverage for some types of potential loss, it is not

---

[5] Here, Defendants rely on the logical fallacy of affirming the consequent. Contrary to Defendants' assumption, a true statement's converse is not necessarily true. *See Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1196 n.7 (9th Cir. 2007).

illusory." (*Id.* at 22 (citing *Stack Metallurgical Servs.*, 2007 WL 464715, at *10*).) Furthermore, Plaintiff asserts that Defendants' interpretation renders Umbrella Coverage A's exclusions meaningless. (Pl.'s Reply Supp. Pl.'s Mot. Summ. J. at 19.) If, as Defendants argue, Umbrella Coverage B covers all injuries that Umbrella Coverage A does not cover, then Umbrella Coverage A's exclusions have no teeth because Umbrella Coverage B would cover any excluded injuries. (*Id.* at 20.)

### 3. Analysis

After examining the meaning of Umbrella Coverage B in these contexts, the Court concludes that only Plaintiff's interpretation is reasonable. Accordingly, Umbrella Coverage B does not provide coverage.

As discussed above, Umbrella Coverage B's Exclusion a. provides that "[t]his insurance does not apply to . . . '[i]njury' that is the subject of the insurance policies shown in the Schedule of Underlying Insurance in the Declarations." (Carney MSJ Decl. Ex. C, at 8.) That provision plainly means — and Defendants agree (Defs.' Mot. Summ. J. at 23) — that Umbrella Coverage B does not apply to injury that is the subject of the Business Auto Policy. Because Fox's injuries are the subject of the Business Auto Policy, Exclusion a. alone precludes coverage under Umbrella Coverage B. Furthermore, even if the Court were to conclude that because Ms. Ensley caused Fox's injuries, they are not the subject of the Business Auto Policy due to its NDE Endorsement naming Ms. Ensley, Exclusion r. clarifies that "[t]his insurance does not apply to any 'injury' *excluded under* the [Business Auto Policy]." (Carney MSJ Decl. Ex. C, at 24 (emphasis added).) In other words, injuries such as Fox's that are the subject of the Business Auto Policy, whether or not thereby excluded, are not covered by Umbrella Coverage B.

The plain text of the NDE Endorsement supports that conclusion. The NDE Endorsement provides that the Business Auto Policy "shall not apply with respect to any claim arising from accidents which occur while the covered vehicle is operated by [Ms. Ensley]." (*Id.* Ex. B, at 232.) In other words, if Ms. Ensley drives a covered vehicle and causes an accident resulting in injury or other damages, the Business Auto Policy will not provide a defense or coverage.

Defendants' argument that Exclusion r., which excludes "injury excluded," does not incorporate the NDE Endorsement because it excludes "claims" does not upset that conclusion. The word "claim" means (1) "[t]he aggregate of operative facts giving rise to a right enforceable by a court[;]" (2) "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional[;]" and (3) "[a] demand for money, property, or a legal remedy to which one asserts a right[.]" BLACK'S LAW DICTIONARY 281-82 (9th ed. 2009). Under those definitions, a "claim" is broader than an "injury," which is just one fact potentially giving rise to a claim. Thus, the word "claim" as used in the NDE Endorsement necessarily encompasses "injury" or whatever other facts comprise the claim.

A careful comparison to other Umbrella Coverage B provisions provides further explanation for use of the word "injury." Umbrella Coverage B's insuring agreement states that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies." (Carney MSJ Decl. Ex. C, at 7.) In contrast, Umbrella Coverage A's insuring agreement states, in relevant part, that "[w]e will pay those sums . . . that the insured becomes legally obligated to pay as damages because of injury *or damage* to which this insurance applies . . . ." (*Id.*) In other words, Umbrella Coverage A covers damages because of injury or damage, whereas Umbrella Coverage B covers damages because of injury only. Thus, all of the Umbrella Policy's exclusion endorsements applicable to Umbrella

Coverage B use the term "injury" in conformity with Umbrella Coverage B's insuring

agreement. (*See id.* at 17 (Child Molestation Exclusion), 21 (War Liability Exclusion), 22 (Fungi

or Bacteria Exclusion), 24 (Exclusion of Underlying Policies Applicable), 25 (Pollution

Exclusion), 27 (Asbestos Exclusion), 29 (Nuclear Exclusion Endorsement), and 31 (Watercraft

Exclusion Endorsement).)

Furthermore, Umbrella Coverage A's insuring agreement states that Plaintiff will pay

amounts "in excess of the amount payable under the terms of any 'underlying insurance' . . .

provided that the 'underlying insurance' also applies, or would apply but for the exhaustion of its

applicable limits of insurance." (*Id.* at 7.) The insuring agreement further states that Plaintiff

"will have a duty to defend . . . when the applicable limit of insurance of the 'underlying

insurance' has been used up . . . ." (*Id.*) In contrast, Umbrella Coverage B's insuring agreement

does not mention any underlying insurance or payment of excess amounts. That difference in

text supports Plaintiff's argument that Umbrella Coverage A covers activities within the scope of

the Business Auto Policy but provides excess coverage if the Business Auto Policy's limits are

exhausted, whereas Umbrella Coverage B applies to activities outside the scope of the Business

Auto Policy. (Pl.'s Resp. Defs.' Mot. Summ. J. at 18.)

Finally, concluding that the NDE Endorsement applies to Umbrella Coverage B does not

render Umbrella Coverage B's coverage redundant or illusory because it still covers injuries not

otherwise covered by Umbrella Coverage A. *See Stack Metallurgical Servs.*, 2007 WL 464715,

at *10. In fact, if Umbrella Coverage B covered what is excluded by the NDE Endorsement and

Umbrella Coverage A, it would render those exclusions meaningless because Defendants

ultimately would be covered by Umbrella Coverage B.

A similar issue was presented in *Hoffman*, where the insured had an umbrella policy that paid for amounts in excess of the "amount recoverable under the underlying insurances." 313 Or. at 468. The insured interpreted "amount recoverable" to mean whatever amount it actually was able to recover, even zero dollars as a result of the primary insurer's insolvency, whereas the insurer interpreted the phrase to mean the amount the insured would have been able to recover were the primary insurer not insolvent. *Id.* A separate provision stated that, if the underlying insurance's policy limit were reduced, the umbrella policy would pay the excess. *Id.* at 471. The Oregon Supreme Court found that the insured's interpretation rendered the provision meaningless because the insurer already would be obligated to pay the excess of the amount the insured actually recovered. *Id.* at 471-72. Assuming the parties did not create meaningless provisions and in order to give effect to all provisions, the Oregon Supreme Court agreed with the insurer. *Id.* at 472.

Here, as in *Hoffman*, the NDE Endorsement and its incorporation into Umbrella Coverage A would be meaningless, and would provide Plaintiff no protection, if Defendants could simply obtain coverage under Umbrella Coverage B. That cannot be what Plaintiff intended when it required Mr. Ensley to sign the NDE Endorsement. The emails between Holl, Baker, and Mr. Ensley demonstrate that both parties intended to exclude Ms. Ensley from coverage so that Oregon Interiors' account with Plaintiff would not be canceled.[6] In order to effectuate that intent and give meaning to all policy provisions, Exclusion r. must incorporate the NDE Endorsement into Umbrella Coverage B.

---

[6] Tellingly, Baker did not provide notice that Plaintiff would cancel *only* the Business Auto Policy if Mr. Ensley did not sign the NDE Endorsement. Rather, Baker provided notice that Plaintiff would cancel Oregon Interiors' *account*. (Perucca Decl. Ex. 1, at 6.) Oregon Interiors' account included both the Business Auto Policy and the Umbrella Policy.

Therefore, Plaintiff has no duty under Umbrella Coverage B to defend Defendants against the Fox Lawsuit. Plaintiff is entitled to summary judgment on that issue.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment (ECF No. 37), and DENIES Defendants' motion for summary judgment (ECF No. 40).

**IT IS SO ORDERED.**

DATED this 11th day of December, 2018.

_____
STACIE F. BECKERMAN
United States Magistrate Judge